914 So.2d 1129 (2005)
STATE of Louisiana, Appellee
v.
Legorgy Earl DAVIS, Appellant.
No. 40,382-KA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 2005.
*1131 H. Clay Walker, Legorgy Earl Davis, for Appellant.
Paul Joseph Carmouche, District Attorney, Catherine Marion Estopinal, Laura Owen Wingate, Assistant District Attorneys, for Appellee.
Before WILLIAMS, DREW and LOLLEY, JJ.
DREW, J.
Legorgy Earl Davis was convicted at a bench trial of second degree murder and was sentenced to life imprisonment without benefits. We affirm the conviction and amend the sentence to reflect that the defendant is to serve life imprisonment at hard labor without benefits. As amended, we affirm the sentence.

FACTS AND TESTIMONY
On Christmas night of 2003, the defendant shot Tony Coleman outside Michelle Player's home, where both men had been talking with friends and neighbors, including Player, Kimberly Wormsley Douglas, Kesha Pickney, and DeAngelo "DJ" Turner.
Player testified that:
 she and Turner were at the house together when Douglas and Pickney arrived that evening;
 the defendant (whose nickname is "Piggy") stopped by soon afterward as they were preparing drinks;
 Coleman, the victim, came to the house shortly thereafter as the group sat around the kitchen table;
 Coleman asked the defendant for his money;
 Davis apparently handed Coleman less money than he expected;
 Coleman left, but told Davis, in a non-threatening manner, that he would see him later at the local store;
 Davis followed the victim out the door, pulling a gun from his britches as he left;
 she heard gunshots[1] soon thereafter;
 Davis had a gun in his hand when she opened the door;
 she saw Coleman, who was obviously injured; and
 she yelled at Davis to leave as she called 9-1-1.
The defendant, Legorgy Earl Davis, has a different version of events. He alleged that:
 Coleman came over and asked him for his money;
 he gave Coleman $20, but still owed five dollars more;
 Coleman was talking crazy and threatening him;
 Coleman called his name;

*1132  he (Davis) pulled the gun, a Llama.45-caliber automatic, from his pants and had it in his coat pocket by the time he went outside;
 the victim grabbed him as he went out the door and beat him on both sides of the head;
 he (Davis) was dizzy and stumbling, with blurred vision; and
 he (Davis) drew the gun and shot at the victim.
DeAngelo "D.J." Turner testified that:
 he had been at Player's house earlier that evening, "stepped out," and walked in again with the victim;
 he left with the victim again and they were talking;
 the defendant came through the door and pointed a gun at Coleman;
 Davis and Coleman struggled over the gun before the defendant shot; and
 he (Turner) put a jacket under the victim's head and ran to notify the victim's family, who lived across the street.
Kimberly Wormsley Douglas testified that she saw Turner put the jacket under the victim's head.
The victim died of two gunshot wounds to the chest. The defense presented photographs of the defendant taken within hours of the offense to support his claim of self-defense. No witness questioned could identify marks in the photographs that might have been the result of a fight. Instead, they commented on blemishes, acne, and a sty. Douglas testified that she did not notice any marks or bruises when the defendant "came in the door" after the shooting. Detective Jeff Brown stated that only a few hours after the shooting, he observed no swelling, abrasions, bruises, or other signs of an altercation.
Rodrick Charles Scott, a defense witness, testified that Player told a different version of the incident nearly two months after the shooting in which the victim punched the defendant in the face. Player said she did not remember talking to Scott after the offense and stated she only told her mother about the events. Scott admitted he was housed in the same dormitory as the defendant at the correctional center. The defendant's mother also testified that the victim had stopped by her house three times the day of the murder looking for the defendant.
The defendant waived his right to a jury trial and was convicted of second degree murder at a bench trial. He was sentenced to life imprisonment without benefits.

DISCUSSION

Sufficiency
The defendant argues that the evidence was not sufficient to support the verdict because:
 Turner's testimony was not credible because it would have been "impossible" for the defendant to shoot the taller victim while raising a gun if the bullets followed the downward trajectory shown by the coroner's report;
 the evidence proved that he and the victim struggled and supported his claim of self-defense;
 the witnesses, all friends of the victim, offered contradictory testimony about the amount of time between his exit and the gunshots;
 the police officers failed to conduct a proper investigation; and
 no motive was shown.
The state counters that:
 the coroner's report does not discredit Turner's testimony any more than it *1133 does the defendant's own account of the events;
 no evidence whatsoever supported the defendant's explanation that he was attacked, including the photographs he offered;
 the defendant failed to cite valid legal theory for his claim of failure to conduct forensic testing, stating that his complaint is neither a Brady claim nor a claim of ineffective assistance of counsel;
 the state is not required to show motive in order to obtain a conviction; and
 arguments as to unreliability of witnesses as well as general credibility determinations were for the trier of fact to make.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the proscribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Ellis, 28,282 (La.App. 2d Cir.6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.2/21/97), 688 So.2d 521. As a state of mind, specific intent need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. Kahey, 436 So.2d 475 (La.1983); State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.09/05/03), 852 So.2d 1020. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Murray, supra; State v. Johnson, 27,522 (La.App. 2d Cir.12/06/95), 665 So.2d 1237. The determination of whether the requisite intent is present is a question for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982).
The proper standard of appellate review for a sufficiency-of-the-evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, *1134 02-3090 (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048.
Defendant divides his sufficiency argument into four areas where the evidence is allegedly lacking.

1. Failure to reconcile the state's theory of the shooting with the coroner's report and the physical evidence brought out at trial
The defendant argues that Turner's testimony about the bullet's trajectory was unreliable, as it was contradicted by the coroner's report. He is splitting hairs. As for the "downward" projectile path upon which the defendant bases his argument, a review of the coroner's report shows that the angle was slight, the findings being that one bullet entered the victim's chest at the level of his fourth rib and exited between ribs 6 and 7, while the other slug entered and exited between ribs 9 and 10. While the entry and exit wounds were observed and recorded, the report does not prove that Turner's testimony was untrue. Neither does Turner's testimony prove the coroner's report is incorrect.
Turner testified that:
 there was no physical contact and immediately explained that he meant that there was "no hitting";
 Davis pointed the gun at Coleman;
 Coleman reached for the gun or tried to push the defendant's hand away;
 the two men struggled over the weapon; and
 Davis pulled free, stepped back, and shot Coleman.
This version of events is not contradicted by the physical evidence. Both men were undoubtedly stumbling, grappling, and ducking. The trial court, acting as the fact finder, apparently found Turner's testimony to be credible, and this reviewing court accords great deference to a fact finder's credibility determination.

2. Failure to conduct widely accepted and accessible forensic testing linking appellant to the crime
The rejection by the police of his claim of self-defense, and their failure to take him to a hospital for a physical examination, is somehow a failure to conduct forensic testing, in the defendant's view. He further claims that his statement and the photographs entered into evidence clearly show that he acted in self-defense. Quite simply, the trial court determined that:
 the defendant was not credible; and
 Detective Jeff Brown was credible.
Again, we give great deference to the fact finder's credibility determinations. The self-defense claims of Davis are further belied by:
 the photographs he himself submitted;
 the credible trial testimony, which did not support his claim of being hit or attacked or any prior fight;
 the marks were described by the witnesses as being blemishes, acne, or a sty;
 Douglas testified that she did not notice any marks or bruises when the defendant came back in the door after the shooting;
 Detective Jeff Brown stated that he did not observe any swelling, abrasions, bruises, or other signs of a fight when he interviewed Davis a few hours after the shooting.

*1135 3. Failure to explain any possible motive Davis would have for killing Coleman

The state does not have to prove motive. State v. Nguyen, 04-321 (La.App. 5th Cir.9/28/04), 888 So.2d 900, writ denied, XXXX-XXXX (La.4/29/05), 901 So.2d 1064.

4. Unreliable witness statements tainted the investigation
Again, this is a credibility determination. Whether the witnesses were better friends with the victim than with Davis does not require a proportional friendship analysis. The learned trial court heard the testimony of all witnesses and made its credibility determinations accordingly.
The defendant admitted to shooting the victim. He told police that he pulled the.45-caliber automatic pistol out of his pants before following the victim outside. The witnesses inside the house told police and/or testified that shortly after the defendant walked out, they heard gunshots. Turner testified that he saw the defendant point the gun at the victim, the two men "tussle" over the gun, and the defendant shoot the victim. The victim was shot not once, but twice, at close range. The evidence, when viewed in a light most favorable to the prosecution, is clearly sufficient to support the guilty verdict of second degree murder.
The defendant's final assignment is a request for this court to review the record for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Bryant, 29,344 (La.App. 2d Cir.5/7/97), 694 So.2d 556. Only one error patent was noted.
The transcript reflects that the trial court failed to specify that the sentence would be served at hard labor as required by La. R.S. 14:30.1(B). The minutes indicate, however, that the sentence was imposed with hard labor. When there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). Because of this failure to state that the sentence was to be served at hard labor, the sentence is illegally lenient.
La. C. Cr. P. art. 882(A) states that an illegal sentence may be corrected at any time by the court imposing the sentence or by an appellate court on review. We amend the sentence to reflect that the life imprisonment is to be served at hard labor, without benefit of parole, probation, or suspension of sentence.

DECREE
We AFFIRM the conviction. We AMEND the sentence to reflect that the defendant shall serve life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. As amended, we AFFIRM the sentence.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] As did two other female witnesses.