GARRETT, J.
liThe defendant, Joshua D. Brooks, was convicted by a jury of second degree murder in the shooting death of a 15-year-old boy, a violation of La. R.S. 14:30.1. He was sentenced to serve 60 years at hard labor without benefit of parole. The defendant appeals his conviction, challenging the sufficiency of the evidence. We affirm the defendant’s conviction and sentence.
FACTS
On April 13, 2009, the 16-year-old defendant, his 17-year-old brother, Jeremy Brooks, and their 16-year-old friend, Paul Jones, were involved in a shooting incident at the Canaan Village Apartments in Shreveport, which caused the death of an innocent bystander, Terrell Savore.
Earlier in the day, a series of verbal confrontations occurred between two groups of youths in the Allendale neighborhood. At various points, physical altercations almost erupted between the defendant or his brother and members of the other group. During one of the earlier incidents, the defendant made a statement to the effect that if he fought and lost, he would shoot.
Later that day, the groups met up again at the apartment complex. A final verbal dispute ensued, with much profanity and more talk of fighting. The defendant stated that there was going to be “pistol play” and declared, “If we lose, someone going to die.” He then went into an apartment and retrieved an assault rifle or “chopper.” He returned to an outside area near a children’s jungle gym armed with this weapon. He and Jeremy, who also wanted the weapon, struggled over it. At some point, either when the defendant was loading it or during the struggle, the weapon discharged into |2the ground. Jeremy obtained the assault rifle despite resistance from the defendant and immediately began firing into the crowd on a hill in front of them. Paul, who was armed with a 9 mm handgun, also began shooting. There was testimony from several witnesses that someone on the hill returned fire with a .25 caliber weapon. After the gunfire ceased, the defendant, Jeremy, and Paul all fled the scene and offered no assistance to the innocent victim.
The victim, who had no involvement in any of the confrontations that day, was shot in the back and wrist and died as the result of massive blood loss. The bullets passed through his body and consequently were not recovered during the autopsy. The forensic pathologist who performed the autopsy opined that the victim’s injuries were caused by two bullets fired by a high-velocity rifle.
The police recovered 13 fired 7.62 x 39 mm cartridge cases; this type of ammunition is utilized with assault rifles. Firearm analysis determined all were fired from the same weapon. Also recovered were six fired .25 caliber cartridge cases; analysis indicated that all six were consistent with one weapon and that five of them were definitely fired from the same weapon. All 27 of the fired 9 mm cartridge *1075 cases recovered at the scene were fired from the same weapon. None of the weapons were recovered.
The defendant, Jeremy, and Paul were originally charged with first degree murder. The charges were later amended to second degree murder. Jeremy was tried first and convicted as charged.[1] The defendant and Paul Rwere tried together in January 2013 and both were also convicted as charged. The defendant was subsequently sentenced to 60 years at hard labor without benefit of parole. His motion to reconsider sentence was denied.
On appeal, the defendant’s sole assignment of error is that the evidence adduced at trial was insufficient to show he had the specific intent to kill or inflict great bodily harm, that he actually fired any shots, that he aided and abetted Jeremy in the commission of any offense, or that he directly or indirectly counseled or procured anyone else to commit a crime.
LAW
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517.
|4The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529; State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Henry, 47,323 (La.App.2d Cir.7/25/12), 103 So.3d 424, writ denied, 2012-1917 (La.3/8/13), 109 So.3d 356.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter *1076 is one of the weight of the evidence, not its sufficiency. State v. Henry, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if | ¿believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Davis, 40,382 (La.App.2d Cir.10/26/05), 914 So.2d 1129, writ denied, 2005-2419 (La.4/17/06), 926 So.2d 512. As a state of mind, specific intent need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. Kahey, 436 So.2d 475 (La.1983); State v. Davis, supra. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Murray, supra; State v. Johnson, 27,522 (La.App.2d Cir.12/6/95), 665 So.2d 1237. The determination of whether the requisite intent is present is a question for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Davis, supra.
The parties to crimes are classified as: (1) principals, and (2) accessories after the fact. La. R.S. 14:23.
The law of principals, as set forth in La. R.S. 14:24, states that:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or |f,directly or indirectly counsel or procure another to commit the crime, are principals.
The defendant’s mere presence at the scene is not enough to “concern” an individual in the crime. State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Schwander, 345 So.2d 1173 (La.1977). Nor can a jury’s inference that an accused aided and abetted in a crime be founded upon mere speculation based upon guilt by association. State v. Schwander, supra. Only those persons who knowingly participate in the planning or execution of the crime are principals. State v. Pierre, 631 So.2d 427 (La.1994). An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Lewis, 46,513 (La.App.2d Cir.9/28/11), 74 So.3d 254, writ denied, 2011-2317 (La.3/9/12), 84 So.3d 551. Acting in concert, each person becomes responsible not only for his own acts, but for the acts of the other. State v. Anderson, 97-1301 (La.2/6/98), 707 So.2d 1223. Under the law of principals, a person may be convicted of an offense even if he has not personally fired the fatal shot. State v. Hampton, supra; State v. Lewis, supra.
TRIAL TESTIMONY
A number of witnesses testified about the confrontations that day which led up to the shooting. The trial in this case was held almost four years after the incident occurred. Most of the witnesses were teenagers. While their testimony contained various discrepancies, they presented a clear narrative of the circumstances leading up to the tragic and senseless death of the victim, an uninvolved third party.
17Jamil Johnson, who was 12 years old at the time of the shooting, was a resident at *1077 the Canaan Village Apartments who happened to witness the shooting and the events immediately leading up to it. This disinterested witness observed young men arguing by the playground and heard the defendant say, “If we lose, someone going to die.” Jamil then saw the defendant obtain the assault rifle from an apartment, load it with a clip he pulled from his back pocket, and “flash” the weapon so everyone could see it. The defendant held it in both hands like he was going to shoot and aimed it at the other group of youths. At this point, Jeremy began to wrestle his brother for possession of the weapon, which fired once into the ground during the struggle. According to Jamil, the defendant resisted Jeremy’s effort to take the gun. Once Jeremy had the gun, he immediately started shooting up a hill toward a parking lot. Paul followed suit, firing his handgun in the same direction.
Precious Johnson, who was 15 years old at the time of the incident, is Jamil’s sister. She likewise witnessed the shooting and the events immediately preceding it. She testified that there was verbal arguing between the defendant and her cousin, La-darius[2] Anderson, aka “Peanut.” She heard her cousin say he wasn’t going to fight the defendant if he was going to pull a gun. Although she did not see where the assault rifle came from, she observed the defendant holding it and shooting it at the ground. At that point, she saw Jeremy take the gun from the defendant and begin firing into the crowd.
IsSherrelle Savore, the victim’s twin sister, testified that she and her brother were among a group of young people who filled out summer job applications at a recreation center that morning. Her brother then left. After he departed, the defendant arrived and exchanged words with Ladarius, but there was no physical fight. Shortly thereafter, Sherrelle was present at a confrontation on Austin Street at which the defendant exchanged words with Terrance Holden, the boyfriend of her sister, Kim. Terrance wanted to fight and was ready to “take it to the field.” The defendant said, “I ain’t taking no losses, I’m shooting.” Sherrelle took this to mean that if the defendant lost the fight, he was going to shoot. Again there was no physical fight. When the defendant left, he said he was getting a gun.
Sherrelle testified that she went to the apartment complex with her friends and was sitting on the monkey bars in the playground when she witnessed a verbal fight. Both Terrance and the defendant were there. She then saw the defendant walk away and return with a “big gun.” She said that the gun was pointed at the ground and she did not see the defendant load or cock it. Sherrelle testified that the weapon appeared to be too big for the defendant, who stumbled and caused it to discharge into the ground. Jeremy then grabbed the gun from the defendant and began to fire at people on the hill in front of him.
Kim Savore, the older sister of the victim and Sherrelle, was also present at the apartment complex. She heard her boyfriend Terrance arguing with Jeremy. Then the defendant declared that there was going to be “pistol play.” The defendant left and returned with a chopper, which he held with both hands. She saw him cock and fire the weapon. Although the 19defendant did not seem to know how to use the chopper, Kim testified that he acted deliberately when he fired into the ground. Jeremy then wrestled the gun away from the defendant and began shooting. In addition to Kim and her compan *1078 ions, there were children playing in the area where he was firing.
Terrance Holden was 23 years old and serving a seven-year sentence for home invasion at the time of trial. He testified that he argued with Jeremy and wanted to fight him. While he saw Jeremy and Paul firing weapons, he denied seeing the defendant with any firearm.
Javarrea Cockerm, aka “Nook,” was a cousin of the victim; he was 20 years old at the time of trial. He testified that Terrance and Jeremy were about to fight at the apartment complex when the defendant ran inside and got the chopper. Ja-varrea stated that the defendant shot in the ground twice before Jeremy wrestled the weapon away from him and opened fire on the crowd.
Ladarius Anderson was 18 years old at the time of the incident. He described the events leading up to the shooting. He and the defendant exchanged words outside the recreation center; the defendant accused him of “muggin” or looking at him with attitude. No fight erupted and their respective groups separated. Later the groups met up again on Austin Street. This time Ladarius had words with Jeremy; Ladarius asked him if he wanted to go behind the school and fight. Jeremy did not. The defendant was also present, and a girl suggested that Ladarius and the defendant should fight and get it over with. The defendant said if he fought and lost, he was still going to shoot. The two groups met up a third time at the apartments. | inLadarius was standing behind Terrance when Terrance confronted Jeremy about “muggin” him. The defendant came through a breezeway with the gun, which he appeared to be racking in preparation to fire it. Then the defendant and Jeremy began tussling over the gun, which discharged during the struggle. According to Ladarius, the defendant and Jeremy each seemed to want the weapon for himself.
Sedricka Ragster testified that she was a cousin of the victim and the sister of Javarrea. She was 16 years old at the time of the shooting and was present at the series of confrontations that day. At the recreation center, she saw a fight almost erupt between the defendant and La-darius. During the incident on Austin Street, she saw the defendant and Paul pass a handgun. At the apartments, she heard Ladarius and the defendant exchange words. The defendant said, “I ain’t taking no loss.” According to Sedric-ka’s testimony, this expression is slang and indicates that “you ain’t fixing to get beat up, you ain’t fixing to fight, so they rather play pistol play.” The defendant got a chopper, which was so big he couldn’t handle it. After he fired it into the ground twice, Jeremy took it away from him. Sedricka testified that the defendant was not trying to stop a fight, but attempting to instigate one.
DISCUSSION
After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty as a principal to the offense of second degree murder. A thorough review of the testimony does not support the defendant’s position and provides more than a rational basis for the jury’s verdict. Although there are some | ndifferences in the witnesses’ recollections, there are significant consistencies that overwhelmingly support the jury’s finding that the defendant had the specific intent to kill or inflict great bodily injury. The majority of the witnesses to the confrontations preceding the shooting heard the defendant express his intention to shoot. Almost every witness personally observed the defendant introduce the as *1079 sault rifle into a situation which was essentially a verbal dispute or, at worst, the preamble to a fistflght. Jamil testified that the defendant flashed the weapon to everyone while Ladarius stated that he carried it as if he were ready to fire. The witnesses agreed that the defendant did not want to relinquish possession and control of the gun to his brother. Sedricka emphatically testified that the defendant was instigating the altercation, not trying to stop it.
The jury was well within its discretion in dismissing any minor inconsistencies in the testimony and in accepting and crediting the testimony that showed that the defendant escalated a verbal altercation into a deadly confrontation by arming himself with an assault rifle, loading it, and then fighting to keep the weapon when his brother attempted to take it. The defendant had indicated repeatedly that he was going to resort to “pistol play” rather than suffer a loss in fighting. Thus, his actions went well beyond merely being present at the scene of the shooting. This record contains more than sufficient evidence on which a reasonable fact finder could conclude that the defendant had the requisite intent to support a conviction for second degree murder of the victim. In addition, the defendant’s argument that the evidence is lacking that he was a principal to the crime is also without merit. The testimony clearly shows that the |12defendant acted in concert with the two other participants to bring about the resultant shooting and death of the victim.
ERRORS PATENT
Our error patent review reveals that the trial court did not properly advise the defendant of the prescriptive period for seeking post-conviction relief as required by La. C. Cr. P. art. 930.8(C). Therefore, we advise the defendant, by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. This court affirmed Jeremy's conviction in State v. Brooks, 47,394 (La.App.2d Cir. 12/12/12), 108 So.3d 161, writ denied, 2013-0080 (La.5/31/13), 118 So.3d 393. However, in light of recent jurisprudence forbidding mandatory life sentences with no possibility of parole for offenders under the age of 18 at the time of the crime, we vacated his life sentence without benefits and remanded for resentencing.

. The appellate record contains different spellings of the names of several witnesses. We utilize the spellings used in the police documents contained in the record.