LOLLEY, J.
11 This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana, whereby a jury convicted the defendant, Paul Anthony Jones, of second degree murder, a violation of La. R.S. 14:30.1. He was sentenced to serve 60 years at hard labor without benefit of parole. After the trial court denied Jones’s motion to reconsider sentence, he now appeals. For the following reasons, we affirm his conviction and sentence.
Facts
On April 13, 2009, Paul Anthony Jones was involved in an argument that occurred between rival gangs of young men at the Canaan Village Apartments in Shreveport, Louisiana. At some point during the argument, Jones’s friend, Joshua Brooks[1], retrieved an assault rifle, known as a “chopper,” from a nearby apartment. Joshua fired the weapon twice into the ground as he and his brother, Jeremy Brooks[2], struggled over the gun. Jeremy took hold of the weapon and fired at the crowd of people surrounding them. Jones then pulled out the 9mm handgun he was carry *410 ing and fired at least 27 rounds at the fleeing crowd.
Terrell Savore, a 15-year-old unarmed, innocent bystander, suffered a fatal gunshot wound as a result of the shooting. Terrell was found lying in [ 2the parking lot at the top of the hill with gunshot wounds to his rear buttocks area and to his left wrist. The gas tank of a nearby vehicle had been punctured by a bullet.
No bullet fragments were recovered from the victim’s body and no guns were recovered at the scene. Twenty-seven shell casings and bullet jackets were found at the scene by detectives.
After a police investigation, Joshua Brooks, Jeremy Brooks, and Jones were arrested and charged by bill of indictment for the first degree murder of Terrell Sa-vore. The charges were later amended to second degree murder. Jeremy Brooks was tried separately and convicted as charged.
Joshua Brooks and Jones were tried as codefendants in January 2013. During the trial, witness testimony was heard placing Jones at the scene as one of the shooters. After hearing all the evidence, the jury returned a 10-2 verdict of guilty of second degree murder as to both Joshua Brooks and Jones. A presentence investigation report (“PSI”) was ordered prior to the sentencing hearing. At the sentencing hearing, after lengthy consideration by the trial court, Jones was sentenced to 60 years at hard labor without the benefit of parole. His motion to reconsider sentencing was denied, and he now appeals to this court.
Discussion
On appeal, Jones alleges three assignments of error: that the evidence was insufficient to support his conviction; that the trial court erred in its instruction of the jury; and, that the sentence imposed on Jones was |sexcessive in light of the fact that he was a juvenile at the time of the offense. Each of these assignments of error is discussed below.

Sufficiency of the Evidence

As his first assignment of error, Jones contends that the jury erred in convicting him of second degree murder based on insufficient evidence to support the conviction. In support of this assertion, Jones cites discrepancies in the witness testimony presented by the state during trial and specifically, he alleges the evidence was insufficient to show that he shot in the direction of the crowd. We disagree.
The standard of appellate review for a sufficiency of the evidence claim is, “whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517.
The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. State v. Casey, 1999-0023 (La.01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). A reviewing court may not impinge on the fact finder’s discretion unless it is necessary to guarantee the fundamental due process of law. Id. The appellate court does not assess credibility or [ 4reweigh. the evidence. State v. Smith, 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great'deference to a jury’s decision to ac *411 cept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Henry, 47,323 (La.App.2d Cir.07/25/12), 103 So.3d 424, writ denied, 2012-1917 (La.03/08/13), 109 So.3d 356. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd, 40,480 (La.App.2d Cir.01/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/09/06), 941 So.2d 35.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Davis, 40,382 (La.App.2d Cir.10/26/05), 914 So.2d 1129, writ denied, 2005-2419 (La.04/17/06), 926 So.2d 512. As a state of mind, specific intent need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. Kahey, 436 So.2d 475 (La.1983); State v. Davis, supra. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Johnson, 27,522 (La.App.2d Cir.12/06/95), 665 So.2d 1237. The determination of whether the requisite intent is present is a question for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982).
The parties to crimes are classified as: (1) principals, and (2) accessories after the fact. La. R.S. 14:23. The law of principals, as set forth in La. R.S. 14:24, states that:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
The defendant’s mere presence at the scene is not enough to “concern” an individual in the crime. State v. Hampton, 1998-0331 (La.04/23/99), 750 So.2d 867, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Schwander, 345 So.2d 1173 (La.1977). Only those persons who knowingly participate in the planning and execution of the crime are principals. La. R.S. 14:24; State v. Pierre, 631 So.2d 427 (La.1994). A jury’s inference that an accused aided and abetted in a crime cannot be founded upon mere speculation based upon guilt by association. State v. Schwander, supra. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Lewis, 46,513 (La.App.2d Cir.09/28/11), 74 So.3d 254, writ denied, 2011-2317 (La.03/09/12), 84 So.3d 551. Acting in concert,J^each person becomes responsible not only for his own acts, but for the acts of the others. State v. Anderson, 1997-1301 (La.02/06/98), 707 So.2d 1223. Under the law of principals, a person may be convicted of an offense even if he has not personally fired the fatal shot. State v. Hampton, supra; State v. Lewis, supra.
Upon reviewing the record in a light most favorable to the prosecution, we find sufficient evidence existed to convict Jones *412 of second degree murder. During the trial, the state supplied eight eyewitnesses to testify to the events of April 13, 2009. Although there are minor inconsistencies among these witnesses in regard to Jones’s exact location while he fired the shots, most of the them placed Jones in or around the location where Sergeant Skyler VanZandt testified to recovering 27 cartridge casings which had been fired from a 9mm semi-automatic handgun.
The state’s first eyewitness, Jamil Johnson, was in close proximity to Jones and the Brooks brothers during the shooting and he was able to provide a detailed description of the events. In particular, he testified that during a verbal altercation about a fist fight, Joshua Brooks told Terrence Holden, “If we lose, someone is going to die.” Jamil witnessed Joshua Brooks get the assault rifle, which he fired, before Jeremy Brooks took the weapon from him and began firing on the crowd. Jamil also witnessed Jones fire a handgun with an extended magazine, up the hill, in the direction of the parking lot and fleeing crowd. Jamil testified to seeing Terrell Savore bleeding in the parking lot before paramedics arrived. Precious Johnson also 17testified to seeing Jones shooting a handgun. Sherrell Savore testified to witnessing Jones flashing a handgun during the argument that occurred earlier in the day. Kim Savore gave testimony about Jeremy Brooks suggesting “pistol play” and to seeing Jones firing a handgun up the hill.
While the witness testimony may have had discrepancies, it is for the finder of fact, the jury in this case, to determine the credibility of witness testimony. When viewed in a light most favorable to the state, the evidence shows Jones was an active participant in the shooting that ended the life of Terrell Savore. Jones was present when Joshua Brooks threatened to shoot because he would “take no losses” and also when Jeremy Brooks mentioned “pistol play.” Jones was aware' that his group planned to use gunfire to end the confrontation if necessary. The evidence shows that Jones was not merely present at the scene, but that he brought a gun to the Canaan Village Apartments and fired that gun in the direction of a crowded parking lot. Regardless of what bullet actually passed through the body of the Terrell Savore, a review of the record shows that the evidence presented in this case was sufficient for any reasonable juror to find Jones possessed the requite specific intent to be convicted as a principal to second degree murder. Accordingly, this assignment of error is without merit.

Denial of Requested Special Jury Instructions

As his second assignment of error, Jones argues that the trial court erred by failing to include jury instructions as requested by defense counsel regarding negligent homicide and reasonable inference of intent to harm. We disagree.
|sThe trial court shall charge the jury of the law applicable to the case; that the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and that the jury alone shall determine the weight and credibility of the evidence. La. C. Cr. P. art. 802; State v. Gage, 42,279 (La.App.2d Cir.08/29/07), 965 So.2d 592, writ denied, 2007-1910 (La.02/22/08), 976 So.2d 1283. A requested special charge shall be given by the trial court if it does not require qualification, limitation, or explanation, .and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La. C. Cr. P. art. 807; State v. Lowery, 33,905 (La. *413 App.2d Cir.02/28/01), 781 So.2d 713, writ denied, 2001-1041 (La.02/22/02), 809 So.2d 978. Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. La. C. Cr. P. art. 921; State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert, denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Marse, 365 So.2d 1319 (La.1978).
Upon conclusion of the trial, the trial court instructed the jury on the duty to determine guilt or innocence by applying the given law and deciding from facts, testimony, and evidence. The jury was instructed as to the state’s burden of proof, the definition of reasonable doubt, and the duty to find the defendant not guilty should the state not prove every element of the charged or lesser offenses to the extent the jury is firmly convinced of the |fltruth of the charge. The trial court went on to explain direct and circumstantial evidence, how witness testimony can be discredited, and that the defendant does not have to put on a defense. The trial court also defined the law of principals and explained what is necessary to prove the requite mental intent to be found to be concerned in the commission of a crime.
The trial court provided the jury with the four possible verdicts which might be rendered: guilty of the charged offense of second degree murder;, guilty of manslaughter; guilty of negligent homicide; or, not guilty. The jury was given the definition of law for the charged offense and each responsive verdict. The trial court explained the elements of each and what the state must prove in order for the jury to convict the defendant of any of the possible offenses. The jury was made aware of the ideas of transferred intent, self-defense, and justifiable homicide. Specific intent was defined for the jury and the jury was instructed that intent to kill may be inferred from the act of pointing a gun and firing at a person. The requested instructions improperly addressed only certain possible verdicts.
However, the defendant contends that the trial court should have allowed the following additional instructions to the jury:
Jurisprudence shows that the common element in negligent homicide cases involving firearms is a finding that a defendant acted in an unreasonably dangerous or unsafe manner at the time of the discharge of his weapon. State v. Materre, 2009-1666 (La.App. 4th Cir.12/08/10) 53 So.3d 615, writ denied, 2011-0090 (La.09/02/11) 68 So.3d 524,
and,
[t]he jury should not be permitted to believe that just because someone is killed, the law regards it as a reasonable inference that |insomeone intended to harm him. State v. Davis, 411 So.2d 2 (La.1982).
A review of the record shows the trial court fulfilled its duty to instruct the jury by explaining the elements of the charged crime of second degree murder and the elements of each of the responsive verdicts, manslaughter and negligent homicide. Instructing the jury on the requested comment made by the court in State v. Materre, supra, regarding an example of what may be considered negligent homicide would have improperly directed the jury’s attention to a certain responsive verdict. As far as the requested instruction from State v. Davis is concerned, while it may have been proper to allow such instruction, it is in the trial court’s discretion to determine if a requested instruction is wholly correct and *414 pertinent. There is no reversible error, as this specific point is adequately included in the general instructions that were given and the trial court’s refusal to incorporate such instruction was harmless and did not impinge on any substantial rights of the accused. Accordingly, this assignment of error is without merit.

Excessive Sentence

Jones’s third assignment of error relates to whether the trial court imposed an excessive sentence in this case, as Jones was a juvenile at the time of the homicide for which he was convicted.
The test for reviewing an excessive sentence claim is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record h reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Watson, 46,572 (La.App.2d Cir.09/21/11), 73 So.3d 471. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered include the defendant’s personal -history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Haley, 38,258 (La.App.2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728.
Second, the appellate court must determine if the sentence is constitutionally excessive. A sentence violates La. Const. Art. I, § 20 if it is grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.01/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.01/15/02), 805 So.2d 166.
The trial court is given wide discretion in the imposition of sentences within the statutory limits. The sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Diaz, 46,750 (La.App.2d Cir.12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more | ^appropriate, but whether the trial court abused its discretion. State v. Free, 46,894 (La.App.2d Cir.01/25/12), 86 So.3d 29.
Under Louisiana law, second degree murder has a mandatory sentence of life in prison without parole, probation, or suspension of sentence. La. R.S. 14:30.1. The United States Supreme Court has held that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders convicted of homicide, stating that “a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.” Miller v. Alabama, — U.S. —, —, 132 S.Ct. 2455, 2475, 183 L.Ed.2d 407 (2012). Miller did not categorically preclude life without parole for juveniles. It merely requires that a sentencing court consider mitigating facts related to the juvenile’s youth before imposing a life sentence without benefit of parole. State v. Fletcher, 49,303 (La.App.2d Cir.10/01/14), 149 So.3d 934.
The Louisiana legislature has addressed the Miller directive by enacting La. C. Cr. P. art. 878.1, which devised a procedure requiring a trial court sentencing a juvenile convicted of a homicide offense to allow the prosecution and defense an opportunity to introduce any *415 aggravating or mitigating evidence and also requires review of all pertinent mitigating factors related to the offender’s age before determining whether parole eligibility is warranted. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases. La. C. Cr. P. art. 878.1; State v. Fletcher, supra.
11sHere, the trial court did not abuse its discretion in sentencing Jones to serve 60 years at hard labor without the benefit of parole. The record reveals that the trial court reviewed the sentencing factors under La. C. Cr. P. art. 894.1 and complied with the doctrine set forth in Miller, codified by La. C. Cr. P. art. 878.1. Additionally, a PSI was ordered and Jones’s educational, social, work and criminal history was thoroughly explored by the trial court during the sentencing hearing. Jones was given an opportunity to give a statement during the preparation of his PSI, but advised the interviewer he had no statement to give. Again, at the sentencing hearing, Jones was afforded an opportunity to be heard, but declined to apologize to the family of the victim or show any remorse for his actions, as his codefendant had done only moments before him.
The trial court pointed out that Miller involved a 14-year-old boy who fired no shots in the murder for which he was accused and merely happened to be the lookout. Jones, on the other hand, did not happen upon the scene unarmed and unaware. He came ready to kill, carrying a 9mm handgun with an extended clip. At the time of the murder, Jones was 16 years old and although technically a juvenile, he was not of such a tender age as not to know what was going on. Jones emptied 27 shots into a crowd of people with deliberate cruelty to the victim and other potential victims. Evidence indicates that the only reason fire ceased was because Jones ran out of ammunition.
114After considering the PSI, Jones’s age, prior criminal record, family history, and other factors, the trial court found Jones was in need of correctional treatment and that a lesser sentence would deprecate the seriousness of this crime. Moreover, Jones’s sentence, when viewed in light of the harm done to society, does not shock the sense of justice. The record is clear that Jones knowingly and willingly participated in the shooting, which ultimately ended in the murder of an innocent young boy, endangered the lives of countless others, and irreparably damaged the victim’s grieving family and community. The trial court gave Jones the benefit of his age, extensive consideration in sentencing, and was well within the bounds of its discretion in determining that parole was not warranted under these circumstances. Based on the foregoing, we agree with the trial court’s sentence and do not consider it excessive. This assignment of error is also without merit.
Error Patent
Our error patent review reveals that the trial court did not properly advise the defendant of the prescriptive period for seeking post-conviction relief as required by La. C. Cr. P. art. 980.8(C). Therefore, we advise the defendant, by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.
11 ^Conclusion
So considering, the conviction and sentence of Paul Anthony Jones is affirmed.
AFFIRMED.

. Joshua Brooks’ conviction for second degree murder was previously affirmed on appeal. State v. Brooks, 49,024 (La.App.2d Cir.05/14/14), 139 So.3d 1072, writ denied, 2014-1202 (La.02/13/15), 159 So.3d 459.

. Jeremy Brooks was convicted of second degree murder in a separate trial and received a life sentence. His conviction was affirmed on appeal in State v. Brooks, 47,394 (La.App.2d Cir. 12/12/12), 108 So.3d 161, writ denied, 2013-0080 (La.05/31/13) 118 So.3d 393, and his life sentence was affirmed in State v. Brooks, 49,033 (La.App.2d Cir.05/07/14) 139 So.3d 571, writ denied, 2014-1194 (La.02/13/15), 159 So.3d 459.