DREW, J.
11 Samuel Ricardo Johnson was charged by an amended 'bill of information with;
• one count of driving while intoxicated-fourth offense, a violation of La. R.S. 14:98(E) (Count One);
• one count of improper lane usage, in violation of La. R.S. 32:79 (Count Two);
• one count of driving under revocation or suspension, in violation of La. R.S. 32:415 (Count Three); and
• one count of refusal to submit to chemical test, in violation of La. R.S. 14:98.2 (Count Four).
These crimes allegedly occurred on May 4,2009.
After a six-day trial, a 12-person petit jury unanimously found Johnson guilty of DWI Fourth Offense.[1] A motion in arrest of judgment was denied.
Johnson was later adjudicated a fourth-felony offender and sentenced to serve 30 years at hard labor without benefits. A *29 motion to reconsider sentence was denied and a motion for appeal was granted.
The defendant asserts six assignments of error:
• an alleged confrontation violation, perfected by counsel, and
• five additional assignments, filed pro se.
We affirm the defendant’s convictions and sentences.
FACTS
The defendant was pulled over for erratic driving by Sergeant Aubrey |aRawls, of the West Monroe Police Department, who testified:
• he was traveling in the inside lane of Cypress Street when a vehicle operated by the defendant passed him on his right;
• defendant crossed the fog line by at least five feet for about 20 feet;
• he initiated a traffic stop with the car pulling into a parking lot;
• he approached the left rear of the • vehicle, asking for ■ á drivers license;
• the driver did not respond when he requested that he exit the vehicle;
• he repeated his request, and the driver got out, very unsteadily;
• the , defendant was swaying, with slurred speech and- a heavy smell of cologne;
• at this point, backup arrived;[2]
• he-, advised the defendant of his Mi- ' randa rights, informing him that he believed he was intoxicated or impaired due to drugs or alcohol;
• the defendant denied , being under the influence of any drugs or alcohol;.
• he requested several times that the defendant perform a number of standardized field sobriety -tests, but the defendant adamantly refused;
• the defendant was arrested and transported to jail;
• Officer Tommy Garrett told him that the' defendant had refused take a test before;.
• when asked to take the Intoxilyzer 5000 test, he refused;,
• after reviewing the defendant’s criminal history and recalling the information provided by Officer Garrett, he sought a search warrant for the defendant’s bodily fluids, in order to discover the defendant’s blood alcohol concentration;
• he and Officer Garrett presented the affidavit and search warrant to Judge H. Stephens Winters at approximately 2:30 a.m.;
h* the judge signed the warrant, approving the bodily fluid draw;[3]
■•after -the warrant issued,- the defendant was taken to Glenwood Regional Medical Center;.
• despite the warrant, the defendant refused to provide a blood sample;
• four officers held him as Laine Mul-heam, R.N., collected a blood sample;
• the blood sample was secured into evidence, and later sent to the Louisiana State Police Crime Lab for' analysis; and
• the crime lab later reported that the defendant’s blood alcohol content was 0.21 grams' percent, which is over twice the legal limit of 0.08 percent.
*30 Officer Garrett' was unable to testify, because he was suffering from a disabling medical condition. By agreement, Officer Garrett’s prior testimony from the motion to suppress hearing was read into evidence, as redacted by counsel and the trial court.
The defendant stipulated to his four pri- or DWI convictions: an October 26, 2000, conviction in Jefferson Parish, an August 22, 2002, conviction in Terrebonne Parish, and two convictions on February 10, 2004, in Jefferson Parish.
After conviction, the defendant’s motion in arrest of judgment argued that his prosecution was not timely instituted, and he should have been tried by six jurors instead of 12 jurors.
The trial court denied the defendant’s motion on both grounds.[4]
I/The state filed a habitual offender bill of information charging the defendant as a fourth-felony offender,[5] alleging these pri- or convictions:
• April 5, 1999, in Orleans Parish for unauthorized use of a motor vehicle;
• August 20, 2001, in St. Charles Parish for possession of cocaine; and
• August 22, 2002, in Terrebonne Parish for aggravated flight from an officer.
The defendant filed a motion to quash the habitual offender bill of information, arjguing that his sentence was ineligible for enhancement. This motion was denied. The defendant was adjudicated a fourth-felony offender.
At sentencing, the trial court reviewed the presentence investigation.
As a fourth-felony offender, the defendant was sentenced to 30 years at hard labor without benefits. The trial court ordered defendant’s sentence on Count One to be served consecutively to the concurrent sentences levied on Counts Two and Three. A subsequent motion for reconsideration, based on excessiveness, was denied.
^DISCUSSION

Confrontation Violation (Counseled)

Officer Garrett’s testimony from the motion to suppress hearing was used at trial in lieu of live testimony, due to the officer’s inability to attend trial because of a sudden and severe medical condition.
In support of his position on this issue, the defendant argues:
• he was never told he could seek a continuance so as to require live testimony;
*31 • he never waived this right to seek a continuance; ,
• his constitutional right of confrontation was thus violated; and
• his conviction and sentence must be •vacated.
The state responds:
• the defendant was advised, pretrial, that the officer would be unavailable;
• the trial court asked him whether or not he wanted to proceed to trial;
• the defendant agreed to proceed to trial without the presence of the officer;
• the defendant suggested that Officer Garrett’s prior testimony be used instead;
• the state agreed with this suggestion; and
• both parties agreed to use a redacted version of the officers previous testimony.
Our laW relative to confrontation is well settled.[6]
RThe defendant stated in open court: “With Officer Garrett I’ll proceed without him but we can take any and all previous testimony that he had and have the clerk of court read it onto the record.” Both sides agreed that if Officer Garrett was unable to physically come to court, his testimony from' the motion to suppress could be used. When the trial court asked for approval from the defendant, he said, “I’m fine with it.”
The trial court then allowed the parties to go through the testimony from the motion to suppress hearing and note what they wanted included and excluded at trial. The officer’s testimony also had to be redacted to remove statements not admissible under the rules of evidence used during trial proceedings.[7]
*32 |7At trial, the court allowed the parties again to review the redacted version of the transcript to identify any issues or objections for the record. The defendant’s only objection pertained to the exclusion of testimony about a prior trial. The redacted version of the testimony was read in open court by the clerk without objection.
It was the defendant’s idea to use Officer Garrett’s testimony in this manner. Prior, to trial, both the state and the defendant agreed to use Officer Garrett’s testimony from the motion to suppress hearing, where the defendant enjoyed the opportunity of cross-examining the officer, in lieu of live testimony. The defendant never objected to this procedure. We can find no Sixth Amendment violation.
Even if there were a violation, it would be harmless error.
Sgt. Rawls, the arresting officer, suspected that the defendant was under'the influence of alcohol after witnessing his erratic driving. Rawls executed the search warrant affidavit, in order to obtain a sample of defendant’s blood, which was analyzed to be over twice the defined level of impairment for a DWI conviction.
Officer Garrett was only a backup officer. His absence in no way contributed to the unanimous verdict beyond a reasonable doubt. This claim is without merit.
There are five pro se assignments of error,"none with any merit.'
|8I. Lack of Counsel at Arraignment
The defendant claims that his Sixth Amendment right to counsel was violated, because he was not represented by counsel at his arraignment on May of 2009.
Defendant is off base here. What happened in May was not .an arraignment.[8]
On that -date, which was defendant’s first appearance in open court, the defendant was actually appointed a■ lawyer, pursuant- to the Sixth Amendment, as per La, C. Cr. P. Art 230.1. The Sixth Amendment right to counsel attaches upon initiation of formal charges in an adversarial criminal proceeding, whether by formal charge, preliminary hearing, indictment, information, or arraignment. State v. Lewis, 43,769 (La.App.2d Cir.12/10/08), 1 So.3d 665, writs denied, 2009-1027 (La.1/29/10), 25 So.3d 827, 2009-1223 (La.1/29/10), 25 So.3d 832.
The court minutes indicate that the defendant was later arraigned on June 22, 2009, at which point he was represented by Attorney Darrell Oliveaux.
II. - Brady Violation
This argument is somewhat unintelligible. It appears the defendant is arguing that the state committed a Brady violation by failing to disclose original video evidence from the incident of May 4, 2009, at the preliminary, examination, and that there was a conspiracy between the district attorney, West Monroe Police Department, and. Judge Winters to falsely convict him. 19The defendant argues that the presentation of the original video evi *33 dence at the preliminary hearing would have proven inconsistencies in Officer Rawls’ testimony.
The primary function of the preliminary examination is to determine if there is probable cause to believe a defendant has committed a crime in order to hold him on his bond obligation for trial. State v. Baham, 2013-0901 (La.6/28/13), 117 So.3d 505; La. C. Cr. P. art. 296. Probable cause exists when the facts and circumstances are sufficient to justify a man of average' caution in the belief that the person has committed a crimé. At a preliminary hearing, the state need not present all its evidence, but only a prima facie case. State v. Baham, supra.
At the preliminary examination, Officer Rawls testified that video evidence existed from the trip to the station in Officer Place’s unit. The defendant demanded a continuance until he received a copy of the video. The trial court, denied this relief because it was “only a preliminary exam.” No objection was made. At the end of the preliminary examination, the state delivered a marked copy of the video evidence to the defendant. The trial court found probable cause on all counts.
There is no Brady violation. No objection was made to the court’s ruling at the preliminary hearing. The only remedy for the state’s failure to show probable cause at a preliminary examination is the release of the defendant without necessity of satisfying a bail obligation by posting a bond. La. G. Cr. P. art. 291, et seq.
I mill. Illegal Search by Taking an Involuntary Blood Sample
The state’s affidavit provided sworn probable cause that rapidly dissipating. evidence was in the defendant’s body. A search warrant was issued.[9]
The defendant argues that his blood sample was obtained without a warrant, and thus, constitutes an unreasonable search. ' However, a' search warrant was properly issued, predicted’ upon an affidavit executed by Officer Rawls.[10]
Based on the information provided by Officer Rawls,-with a valid warrant signed *34 by Judge Winters, a sample of the defendant’s blood was taken. There was obviously a substantial basis for Judge Winters to Inconclude that probable cause existed. The Fourth Amendment was not violated.[11]
IV. Jury Composition
The defendant claims that his conviction is invalid, because he was convicted by a jury composed of 12, instead of 6, jurors. On December 5, 2013, the state filed an amended bill of information charging the defendant with DWI Fourth Offense, pursuant to La. R.S. 14:98(E), which provides this possible punishment:
On a conviction of a fourth or subsequent offense, notwithstanding any other provision of the law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction the offender shall be imprisoned with or without hard labor for not less than ten years nor more than thirty years and shall be fined five thousand dollars.[12]
The state responds that this defendant had previously been convicted of DWl Third Offense, for whieh he was ordered to undergo substance abuse treatment and home incarceration, thus requiring a hard labor sentence for a conviction on the instant crime, pursuant to La. R.S. 14:98(E)(4).[13]
Our law on the composition of petit juries is well settled.[14]
*35 112The state presented documentation proving that the defendant was | iapreviously sentenced to three years at hard labor with all but 30 days suspended for a previous DWI Third Offense conviction under La. C. Cr. P. art. 14:98(D). In addition to the hard labor sentence, he was ordered to complete a substance abuse program, and then report for home incarceration. This he did, requiring a 12-person jury under the instant facts. La. R.S. 14:98(E)(4)(a); State v. Corbitt, supra.
Additionally, even if La. C. Cr. P. art. 14:98(E) required a jury of six, this would be harmless error. The empaneling of a jury composed of a greater number of persons, than constitutionally required where a unanimous verdict was rendered does not constitute a nonwaivable jurisdictional defect subject to automatic nullity. State v. Jones, supra. In any event; the jury was unanimous. We see no harm on this point.][15]
V. Failure to Grant Motion in Arrest of Judgment
This motion rests on three separate grounds:
• the amended information filed on December 5, 2013, denied him notice of the crimes charged, and hurt his ability to prepare a defense;
• prosecution of his case was not timely instituted; and-
• he was charged with violation of La. R.S. 14:98(E) when the state actually intended to prosecute him under La. ' R.S. 14:98(E)(4).
Our law on the required notice of charges is well settled.[16]
*36 114La. R.S. 14:98(E) includes La. R.S. 14:98(E)(4)(b).[17]
The defendant filed a motion in arrest of judgment in December of 2013 and amended it twice in January of 2014. The defendant contended that the amended bills of information, filed on October 9 and December 5, 2013, cited two different charges. On the amended bill of information filed on October 9, 2013, Count One states “driving while intoxicated-secoñd, fourth offense” in violation of “La. R.S. 14:98(E)(4).” The bill also noted that the defendant had been sentenced to substance abuse treatment and home incarceration for a previous DWI Third Offense. conviction. On the amended bill of information filed on December 5, 2013, Count One states “driving while intoxicated — fifth offense” in violation of “La. R.S. 14:98(E).” This bill did not mention his previous sentence to substance abuse treatment and home incarceration.
| ifiThe trial court did not err in denying the motion. The state is allowed to amend the bill of information, both as to form and substance, at any time before trial. State v. Lewis, supra. It is farcical to allege prejudice by an amended bill of information charging a violation of La. R.S. 14:98(E) without spelling out which subpart of Subsection (E). Any fact that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. However, La. R.S. 14:98(E)(4)(a) provides for an additional penalty due to a prior conviction. It is not a new crime, and thus, does not require additional facts to be alleged in the indictment. State v. Gage, supra; Apprendi v. New Jersey, supra.
The defendant knew as early as September 16, 2013, that he would be subject to mandatory hard labor for his previous DWI Third Offense conviction in which he was 'sentenced to substance abuse treat-mént and home incarceration. The trial court stated that it believed that including this fact in the bill of information would be prejudicial to the defendant. This claim is without merit.
ERROR PATENT
As a fourth felony offender, the defendant was sentenced to 30 years at hard labor without benefits. The trial *37 court failed to order the sentence to be served without benefit of parole. La. R.S. 14:98(E)(4)(b) requires that if a defendant previously received the benefit of suspension of sentence,- probation, or parole as a fourth-offender, no part of his sentence may be imposed with benefit of suspension of sentence, probation, or parole. The Instate presented documentation proving that the defendant had been previously sentenced to 10 years at hard labor, with all but three years suspended, with benefit of parole and probation, DWI Fourth conviction.
Before the defendant was sentenced on Count One, the state argued that La. R.S. 14:98(E)(4)(b) applied to his case, forbidding parole eligibility under the habitual offender statute. The trial court concluded that the Department of Corrections would decide parole eligibility, but indicated that the defendant’s prior felony convictions should disqualify him from parole.
The trial court was under the impression that when a- defendant is sentenced under a statute that contains ho prohibition of parole, the district court must-sentence the defendant to á term that does not include such a prohibition, because parole eligibility under La. R.S. 15:574.4 is to be determined by the Department of Corrections; St. Amant v. 19th Judicial District Court, 94-0567 (La.9/3/96), 678 So.2d 536; State v. Roberts, 42,417 (La.App.2d Cir.9/19/07), 966 So.2d 111. Actually, any restrictions on parole eligibility imposed on habitual offender sentences are those called for in the referenced statute. State v. Hollingsworth, 42,317 (La.App.2d Cir.8/15/07), 962 So.2d 1183.
Since defendant is ineligible for parole pursuant to La. R.S. 14:98(E)(4),- his sentence on Count One is illegally lenient, but is self-correcting by the statutorily mandated requirement of parole ineligibility.
DECREE
The defendant’s conviction and sentence are AFFIRMED.

. • The state chose not to prosecute Johnson on Count Four, Out of the presence of the jury, Judge Rambo fo'und Johnson guilty on Counts Two-and Three. Johnson-was sentenced to 90 days, on each count to run concurrently, with the other count, The trial court ordered that the sentence for DWI Fourth be served consecutively with these combined 90-day sentences.

. Officer - Tommy Garrett, Officer Matthew Graves, and Officer Christopher Place.

. Judge Winters -accidently circled the time as "p.m.” instead of '‘a.m,”.Later that morning, he added, an addendum to the warrant, correcting the technical error.

. First, the trial court found that the state timely instituted prosecution, because amended bills of information relate back to the initial bill of information.
Second, the trial court ruled that the jury composition issue had already been settled at a previous hearing. The trial court further reasoned that since the defendant had previously been sentenced to substance abuse treatment and home incarceration under La. R.S. 14:98(E), a 12-person jury was required, because La. R.S. 14:98(E)(4) required imprisonment at hard labor for offenders previously sentenced under the statute to substance abuse treatment and home incarceration.
The trial court found it irrelevant that the bill of information did not reference La. R.S. 14:98(E)(4) and the defendant’s sentence to substance abuse treatment and home incarceration, reasoning that La. R.S. 14:98(E) encompasses all of its subparts, including La. R.S. 14:98(E)(4), which was merely a sentencing provision. The trial court further stated that even if a six-person jury was required, the defendant suffered no prejudice, because the verdict was unanimous.

. The trial court did not sentence the defendant for his conviction on DWI Fourth and then vacate and resentence him for the later habitual offender adjudication. The trial court sentenced the defendant only once; after adjudication. This is reasonable, less expensive, and safer than transporting a defendant to the Department of Corrections and back.

. The Confrontation Clause of the Sixth Amendment provides that in "all- criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him," and limits the admission of testimonial hearsay statements at criminal trials to situations when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Sixth Amendment safeguards the defendant’s right to confront his accusers and to subject their testimony to rigorous testing in an adversary proceeding before the trier of fact. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); State v. Kennedy, 2005-1981 (La.5/22/07), 957 So.2d 757, rev’d in part on other grounds, Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008); State v. Dukes, 46,029 (La.App.2d Cir. 1/26/11), 57 So.3d 489, writ denied, 2011-0443 (La.3/2/12), 83 So.3d 1033.
Confrontation errors are subject to a harmless error analysis. See Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); State v. Robinson, 2001-0273 (La.5/17/02), 817 So.2d 1131; State v. Cope, 48,739 (La.App.2d Cir.4/9/14), 137 So.3d 151, writ denied, 2014-1008 (La.12/8/14), 153 So.3d 440. The correct inquiry'is whether, assuming that the damaging potential of the cross-examination was fully realized, a reviewing court might nonetheless determine the error was harmless beyond a reasonable . doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness’s testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.
See also La. C. Cr. P. art. 841.

. • In reference to what the trial'court decided to include, Judge Rambo stated;
"As I told you earlier, probably ninety percent of what both of you wanted out was taken out. There’s probably five or ten percent that one side or the other wanted in or out that is different, In other words, if you wanted it out, I put it in. If you want *32 ed it in, I may have taken it out. So I tried ■to do it in such a way as to accomplish a couple of things. One, to kind of make it flow. Secondly, to take away any reference that would show that there was a previous trial in this-you know, the previous trial for DWI on the other case. And also, taking out any reference that would show this was basically a motion to suppress evidence hearing, so that they would take it just as testimony by the witness about the facts and circumstances of what took place on the occasion that we’re talking about with Mr. Johnson as on trial; that being the May 4, 2009, date.”

. Some states do, in fact, call this proceeding an arraignment.

. Our Supreme Court held in State v. Lee, 2005-2098 (La.1/16/08), 976 So.2d 109:
The Louisiana and Federal constitutions prohibit unreasonable searches and seizures. A search warrant may issue only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized. Probable cause sufficient to issue a search warrant "exists when the facts and circumstances within the affi-ant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched." State v. Johnson, 408 So.2d 1280, 1283 (La.1982). The task for a reviewing court is simply to insure that under the totality of the circumstances the magistrate had a "substantial basis” for concluding probable cause existed. Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). Determination of probable cause does not rest on the officer's, subjective beliefs or attitudes, but turns oh a completely objective evaluation of all the circumstances known to the officer, at the time of his challenged action. (Citations omitted.)

. "The defendant committed the traffic violation of improper lane, by leaving the roadway, in his vehicle, on the right side of the road over five feet. After a traffic stop was completed and personal contact was made with Samuel R. Johnson, the effects of alcohol were obvious. Samuel R. Johnson refused to submit to a Standardized Field Sobriety ... Samuel R. Johnson's criminal record shows that he has been arrested for DWI seven times and convicted four times ... The affiant believes due to his experience and training, Samuel R. Johnson is impaired and is concealing evidence of a criminal violation.”

. The trial court also denied defendant's motion to suppress the search warrant on March 28, 2012, from which ruling he sought writs from this court. We denied relief on July 5, 2012.

. This punishment, if read in isolation from other facts, reveals DWI Fourth Offense to be a "Relative Felony,” which can be punished with or without hard labor. A relative felony requires six votes out of six to reach a verdict.

. This is considered a "Mandatory Felony,” meaning any sentence must be served at hard labor. Such a crime requires at least 10 votes out of 12 jurors, in order to reach a verdict.

. Article I, Section 17 of the Louisiana Constitution provides in pertinent part:
A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict.
La. C. Cr. P. art. 782(A) provides:
Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict. La. R.S. 14:98(E) provides in pertinent
part:
(l)(a) Except as otherwise provided in Subparagraph (4)(b) of this Subsection, on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than ten years nor more than thirty years and shall be fined five thousand dollars.
[[Image here]]
(4)(a) If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to Subsection D of this Section, the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but shall be imprisoned at hard labor for not less than ten nor more than thirty years, and at least three years of the sentence shall be
*35 imposed without benefit of suspension of sentence, probation, or parole.
(4)(b) If the offender has previously received the benefit of suspension of sentence, probation, or parole as a fourth offender, no part of the sentence may be imposed with benefit of suspension of sentence, probation, or parole, and no portion of the sentence shall be imposed concurrently with the remaining balance of any sentence to be served for a prior conviction for any offense.
Sentencing under La. R.S. 14:98 E(l) is unavailable to defendants who have previously been required to participate in substance abuse treatment and home incarceration as third offenders or who have previously received the benefit of suspension of sentence, probation, or parole as fourth offenders. See La. R.S. 14:98 E(4)(a) and La. R.S. 14:98 E(4)(b). State v. Corbitt, 2004-2663 (La.App. 1st Cir.6/10/05), 917 So.2d 29, writ denied, 2005-1656 (La.2/3/06), 922 So.2d 1174; State v. Johnson, 2010-196 (La.App. 3d Cir. 11/24/10), 52 So.3d 273.
The Louisiana Supreme Court has held that a trial by an incorrect number of seated jurors, either more than or less than required, renders the verdict and sentence null. State v. Jones, 2005-0226 (La.2/22/06), 922 So.2d 508. However, under the harmless error analysis, the court determined that the empaneling of a jury composed of a greater number of persons than constitutionally required where a unanimous verdict was rendered did’not constitute a'nonwaivable jurisdictional defect subject to automatic nullity. State v. Jones, supra.

. Our analysis was guided by State v. Dahlem, 2014-1555 (La.3/15/16), 2016 WL 1048578, 197 So.3d 676, rendered on March 15, 2016, wherein.the Louisiana Supreme Court, with Judge Crichton as organ for the court, sustained a conviction by a unanimous six-person jury, when the offense was arguably triable by a 12-person jury.

. The Sixth Amendment requires that a defendant be informed of the crimes he faces. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him, La. Const. Art. 1, § 13 combines several bedrock rights from the Fifth and Sixth Amendments. The bill must inform the accused of the nature and cause of the accusation in sufficient detail that he may prepare for trial and that the court may determine the admissibility of evidence. State v. Johnson, 93-0394 (La.6/3/94), 637 So.2d 1033; State v. Dotie, 43,819 (La.App.2d Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/6/09), 21 So.3d 297.
*36 In accordance with La. C. Cr. P.,art. 487, the district attorney has complete authority to amend indictments, both as to form and. substance, at any time before trial. State v. Lee, 2010-1592 (La.App. 1st Cir. 11/10/10), 52 So.3d 210, writ denied, 2010-2741 (La.9/2/11), 68 So.3d 523; State v. Reel, 2010-1737 (La.App. 4th Cir.10/3/12), 126 So.3d 506, writ denied, 2012-2433 (La.4/12/13), 111 So.3d 1018; State v. Jackson, 04-306 (La.App. 5th Cir.8/31/04), 882 So.2d 613.
Any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doub't. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224 n. 6, 143 L.Ed.2d 311 (1999); State v. Gage, 42,279 (La.App.2d Cir.8/29/07), 965 So.2d 592, writ denied, 2007-1910 (La.2/22/08), 976 So.2d 1283. The rule of Apprendi made exception for prior convictions because they were the product of proceedings that afforded crucial procedural protections, particularly fair notice, the right to jury trial, and proof beyond a reasonable doubt. State v. Brown, 2003-2788 (La.7/6/04), 879 So.2d 1276, cert. denied, 543 U.S. 1177, 125 S.Ct. 1310, 161 L.Ed.2d 161; State v. Gage, supra.

. Additionally, the structure of La. R.S. 14:98 indicates .that La. R.S. 14:98(E)(4)(b) sets forth an additional penalty, not a new crime. La, R.S, 14;98(E)(l)(a), La. R.S, 14:98(E)(4)(a), and La. R.S. .14:98(E)(4)(b) must be read together. .Accordingly, Subsection (E)(4)(b) is not "a separate offense requiring additional facts to be alleged in the indictment. State v. Gage, supra.