Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,312-KA
No. 53,313-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                           Appellee

versus

MONTECO K. FROST                             Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court Nos. F-2017-126 and F-2018-209

Honorable Stephen G. Dean, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By:  Edward K. Bauman

JOHN M. LANCASTER                      Counsel for Appellee
District Attorney

AMANDA WILKINS
K. DOUGLAS WHEELER
Assistant District Attorneys

* * * * *

Before PITMAN, GARRETT, and COX, JJ.

**GARRETT, J.**

The defendant, Monteco K. Frost, was convicted as charged of seven offenses arising from an incident in which a house was shot up by four gunmen who thought they could steal drugs there. A resident of the home was injured by the gunfire, and a potential witness walking near the home was fatally shot as the gunmen fled. The offenses were one count each of first degree murder, aggravated burglary, criminal conspiracy to commit aggravated burglary, and conspiracy to commit first degree murder, as well as three counts of attempted first degree murder of the house residents. For the offense of first degree murder, the defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On each of the three counts of attempted first degree murder, he was sentenced to 50 years at hard labor without benefit of parole, probation, or suspension of sentence. On the charges of aggravated burglary and conspiracy to commit attempted first degree murder, he was sentenced to 30 years at hard labor. For the offense of criminal conspiracy to commit aggravated burglary, he was sentenced to 15 years at hard labor. The trial court ordered that all of the sentences were to be served consecutively and the defendant was to be given credit for time served. The defendant appeals.

For the reasons expressed below, we are constrained to vacate the defendant's conviction and sentence for aggravated burglary on grounds of double jeopardy. All other convictions and sentences are affirmed.

## FACTS

On the night of May 6, 2017, the defendant went to Rayville with Quincy Hardiman, Josh Chisley, and Rontarrius Jackson to "hit a lick" or

commit a robbery or burglary. Their destination was a house where the defendant believed they could steal drugs.[1] All three of his companions testified that "hitting the lick" was the defendant's idea. They traveled in a black Ford Expedition owned by Hardiman's mother and driven by the defendant. Each of the men was armed: the defendant and Jackson had 9 mm handguns, Hardiman had a .380 handgun, and Chisley had an AK-47 Draco. After parking a short distance away, they approached the house.

The residence was occupied that night by three members of the McDaniel family. Deshun McDaniel, Sr. ("Deshun Sr."), was in his bedroom watching television, while his eight-year-old son, "T.M.," was playing video games on the large-screen television in the living room. Deshun Sr.'s wife resided there but was not at home at the time of the incident. His older son, Deshun McDaniel, Jr. ("Deshun Jr."), was in the kitchen cooking when someone kicked the side door of the house open. Deshun Jr. ran to the door and was able to slam it on the arm of the person attempting to enter the house. The intruder was wearing long sleeves and holding a gun which he began firing into the house. Deshun Jr. testified that shots fired by the intruder almost struck his little brother. The gunmen outside the house also opened fire, striking the house with numerous bullets. Deshun Jr. testified that, when the intruder began shooting, he yelled for his father. Deshun Sr. testified that, in response to a loud boom, he ran from his bedroom toward the kitchen. He described finding a chaotic scene with bullets "erupting," and his older son fighting with the gunman whose arm was trapped in the door. Deshun Jr. eventually released the door and fled

_____

[1] A police investigator testified that only a personal use amount of marijuana was found in the house and there was no large amount of cash.

out another door of the house. He was struck by gunfire in the buttocks and leg. His father and his little brother ran from the gunfire and were miraculously uninjured.[2]

The four gunmen ran back to the Expedition and began to flee. Almost immediately, they saw Keric Whitfield, a relative of the McDaniel family, walking alongside the road. Concerned that Whitfield could identify them, the defendant said that he "gotta go." The defendant, who was driving, used the driver's power switch to lower the back seat window on the driver's side. Chisley, who was in the seat behind the defendant, stuck his AK-47 Draco out the window and fired three bullets at Whitfield. One of the bullets entered Whitfield's right thigh, damaged his right femoral artery, exited his right thigh, entered his left thigh, and then exited again. The gunmen fled. A patrol officer responding to a 911 call about the gunfire from the incident at the McDaniel home arrived about 30 seconds before Whitfield died from exsanguination.

Over the next few days, the police developed the defendant and his cohorts as suspects. Based on an anonymous tip, Hardiman was brought in for questioning. He denied involvement and was released. However, his mother gave the police permission to search the Expedition, where a 9 mm bullet was observed by an officer on the driver's seat. When Hardiman attempted to hide the bullet, he was arrested for obstruction of justice. He then gave a statement to the police in which he provided details of the offenses and the names of his accomplices, all of whom were questioned by the police and denied involvement. Eventually, Chisley and Jackson gave

---

[2] Deshun Sr. was able to escape from the house, and T.M. hid in a bathtub.

statements admitting their complicity in the incident at the McDaniel home and the subsequent murder of Whitfield.

On May 31, 2017, the defendant, Hardiman, and Chisley were indicted for the first degree murder of Whitfield, three counts of attempted first degree murder of the members of the McDaniel family, criminal conspiracy to commit first degree murder of Deshun Jr., aggravated burglary, and criminal conspiracy to commit aggravated burglary.[3] On August 16, 2018, Chisley pled guilty to manslaughter and aggravated burglary and agreed to testify for the state. In September 2018, the state filed a motion to sever, in which it stated that it had elected to try the defendant alone. Consequently, an amended bill of indictment was filed against only the defendant on September 11, 2018.

The defendant's jury trial commenced on September 17, 2018. Hardiman, Chisley, and Jackson testified on behalf of the state. Although there were slight variances in their testimony, all of them identified the defendant as the instigator of the offenses committed on May 6, 2017, including Whitfield's murder. Numerous photos of the crime scenes were introduced into evidence, along with bullets and projectiles recovered at the sites. A unanimous jury convicted the defendant as charged on all seven offenses.

On September 26, 2018, the trial court imposed the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence for the first degree murder of Whitfield. On January 9, 2019, the 23-year-old defendant appeared for sentencing on the

---

[3] The record does not contain information pertaining to the charges against Jackson.

4

remaining offenses. The trial court noted that the presentence investigation ("PSI") report included "negative and derogatory information but no positive information" about the defendant. It observed that the defendant's extensive juvenile record began when he was 13 years old and resulted in him being on juvenile probation or incarcerated for various offenses in violation of juvenile probation for practically the entire period until he turned 18. The PSI report indicated that his adult criminal record began in 2013 with convictions for simple burglary and flight from an officer, for which he received 45 days in jail. In 2014, he pled guilty to aggravated second degree battery, for which he was sentenced to five years at hard labor, with four years suspended and five years of probation upon release from incarceration. In 2016, he pled guilty to cruelty to juveniles and was sentenced to five years at hard labor with three years suspended and two years of supervised probation upon release from incarceration. Additionally, the PSI report indicated that, on September 12, 2018, while awaiting his trial on the instant offenses, the defendant was charged with aggravated escape, illegal possession of stolen things, flight from an officer, aggravated obstruction of a highway of commerce, and resisting an officer with force or violence.

The trial court sentenced the defendant to 50 years at hard labor without benefit of parole, probation, or suspension of sentence on each of the three counts of attempted first degree murder; 30 years at hard labor on the charges of aggravated burglary and conspiracy to commit attempted first degree murder; and 15 years at hard labor on the offense of criminal conspiracy to commit aggravated burglary. The trial court ordered that all of

5

the sentences were to be served consecutively to each other and to the previously imposed life sentence for first degree murder.[4]

The defendant appealed, asserting three assignments of error. They are: (1) the defendant's convictions for attempted first degree murder and the underlying offense of aggravated burglary violated double jeopardy; (2) the jury erred in finding that the defendant had the specific intent to commit attempted first degree murder; and (3) defense counsel was ineffective in failing to file a motion to quash the amended bill of indictment.

## DOUBLE JEOPARDY

The defendant argues that his convictions for attempted first degree murder and aggravated burglary constituted double jeopardy because the aggravated burglary was the underlying offense for the attempted first degree murder charges. Because of the manner in which the state chose to prosecute these charges and the jury charges instructing the jurors about the elements of two of the three attempted first degree murder charges, we find merit in this argument.

### *Law*

Both the United States and Louisiana Constitutions provide that no person shall be twice put in jeopardy of life or liberty for the same offense. U.S. Const. Amend. V; La. Const. art. I, § 15; La. C. Cr. P. art. 591. Double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct. *State v. Vaughn*, 431 So. 2d 763 (La. 1983); *State v.*

---

[4] Additionally, the defendant's probation for aggravated second degree battery was revoked, and he was ordered to serve his previously suspended sentence for that offense, also to be served consecutively.

6

*Hardyway*, 52,513 (La. App. 2 Cir. 2/27/19), 266 So. 3d 503, *writ denied*, 19-00522 (La. 10/21/19), 280 So. 3d 1156.

In *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the United States Supreme Court set out a precise rule of law to determine if a double jeopardy violation has transpired. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, *supra*. Louisiana's separate "same evidence" test is no longer used in determining whether a double jeopardy violation exists. *State v. Frank*, 16-1160 (La. 10/18/17), 234 So. 3d 27; *State v. Hardyway*, *supra*.

When proof of the commission of a felony is an essential element of felony murder or attempted felony murder, Louisiana courts have held that the defendant cannot be convicted and punished for both the murder or attempted murder and the underlying felony. *State v. Thomas*, 50,929 (La. App. 2 Cir. 8/10/16), 201 So. 3d 263, *writ denied*, 16-1642 (La. 9/6/17), 224 So. 3d 980; *State v. Coates*, 27,287 (La. App. 2 Cir. 9/27/95), 661 So. 2d 571, *writ denied*, 95-2613 (La. 2/28/96), 668 So. 2d 365.

The remedy for a double jeopardy violation is that the less severely punishable conviction and sentence are vacated. *State v. Hardyway*, *supra*.

The defendant was convicted of three counts of attempted first degree murder. La. R.S. 14:30(A) provides, in pertinent part, that first degree murder is the killing of a human being:

> (1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of . . . aggravated burglary[.]

7

. . .
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.
. . .
(5) When the offender has the specific intent to kill or to inflict great bodily harm upon a victim who is under the age of twelve or sixty-five years of age or older.

La. R.S. 14:27 defines an attempted offense as occurring when any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object.

The defendant was also convicted of aggravated burglary. La. R.S. 14:60 defines this offense as follows:

A. Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, under any of the following circumstances:

(1) If the offender is armed with a dangerous weapon.

(2) If, after entering, the offender arms himself with a dangerous weapon.

(3) If the offender commits a battery upon any person while in such place, or in entering or leaving such place.

An "entry" for purposes of the crime of burglary occurs when any part of the intruder's person crosses the plane of the threshold. *State v. Bryant*, 12-233 (La. 10/16/12), 101 So. 3d 429; *State v. Bailey*, 48,042 (La. App. 2 Cir. 5/15/13), 115 So. 3d 739, *writ denied*, 13-1385 (La. 12/6/13), 129 So. 3d 530.

### *Discussion*

The defendant contends that his convictions for attempted first degree murder and aggravated burglary violate double jeopardy because aggravated burglary was the underlying offense for the attempted first degree murder

charges. The state argues that double jeopardy was not violated because there were two other possible grounds for charging the defendant with attempted first degree murder: the defendant had the specific intent to kill more than one person and one of his victims was under the age of 12 years.

Our review of the record reveals that the state argued to the jury that the defendant was guilty of three counts of attempted first degree murder because he attempted to kill the McDaniels "in the course of aggravated burglary."[5] Thereafter, the trial court, without objection, charged the jury that, as to the counts pertaining to Deshun Jr. and Deshun Sr., they should convict the defendant of attempted first degree murder if they found beyond a reasonable doubt that he had the specific intent to kill them while engaged in the "perpetration or attempted perpetration of aggravated burglary."[6] No other ground enumerated under La. R.S. 14:30, such as having specific intent to kill more than one person, was mentioned as to these two counts.[7] As a result, the state was limited to proving attempted first degree murder

---

[5] In its closing argument, the prosecutor specifically stated:

> They are guilty of those three crimes: attempted first degree murder. Why? Because they attempted to kill these people in the course of aggravated burglary. Do you remember the definition we read? First degree murder the killing of a human being in the perpetration of an aggravated burglary. This was an attempt because they were committing aggravated burglary.

[6] The jury was only charged pursuant to La. R.S. 14:30(A)(1) as to the two adult occupants of the house. As will be discussed *infra*, the trial court charged the jury, pursuant to La. R.S. 14:30(A)(5), that the count of attempted first degree murder pertaining to eight-year-old T.M. involved the specific intent to kill a victim under the age of 12 years.

[7] See and compare *State v. Whins*, 96-0699 (La. App. 4 Cir. 4/9/97), 692 So. 2d 1350, *writ denied*, 97-1227 (La. 11/7/97), 703 So. 2d 1263, wherein the court found no double jeopardy violation because the trial court's jury charge set forth multiple aggravating circumstances (the defendant engaged in perpetration of aggravated burglary, the defendant had specific intent to kill more than one person, and the defendant had the specific intent to kill a victim under the age of 12 years) which the jury could have found applicable.

with only the aggravated burglary charge under the felony murder doctrine as to the counts pertaining to Deshun Jr. and Deshun Sr. *See State v. Hardyway*, *supra*.

In view of the jurisprudence, the facts of the instant case, the manner in which the state chose to prosecute this case, and the jury instructions given here, we are required to find a double jeopardy violation. The remedy for a double jeopardy violation is vacating the less severely punishable conviction and sentence. Consequently, we must vacate the defendant's conviction and sentence for aggravated burglary, the less severely punishable offense.[8]

## SPECIFIC INTENT TO COMMIT
## ATTEMPTED FIRST DEGREE MURDER

The defendant argues that the jury erred in finding that he had specific intent to commit attempted first degree murder of the three occupants of the McDaniel house. We find no merit to this assignment of error.

### *Law*

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively

---

[8] The penalty for attempted first degree murder is imprisonment at hard labor for not less than 10, nor more than 50 years, without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:30; La. R.S. 14:27. The penalty for a conviction of aggravated burglary is imprisonment at hard labor for not less than one nor more than 30 years. La. R.S. 14:60.

embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Turner*, 52,510 (La. App. 2 Cir. 4/10/19), 267 So. 3d 1202, *writ denied*, 19-00873 (La. 9/24/19), 279 So. 3d 386. A reviewing court accords great deference to the factfinder's decision to accept or reject the testimony of a witness in whole or in part. *State v. Turner*, *supra*.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Hust*, 51,015 (La. App. 2 Cir. 1/11/17), 214 So. 3d 174, *writ denied*, 17-0352 (La. 11/17/17), 229 So. 3d 928.

In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Weston*, 52,312 (La. App. 2 Cir. 11/14/18), 260 So. 3d 722, *writ denied*, 18-2066 (La. 4/22/19), 268 So. 3d 299. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due

11

process of law. *State v. Sosa*, 05-0213 (La. 1/19/06), 921 So. 2d 94; *State v. Hust*, *supra*.

Specific intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. *State v. Weston*, *supra*. Because specific intent is a state of mind, it does not have to be proven as a fact, but may be inferred from the circumstances and the conduct of the accused. *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So. 2d 434; *State v. Hust*, *supra*.

Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing it at a person. *State v. Hust*, *supra*; *State v. Butler*, 37,226 (La. App. 2 Cir. 6/25/03), 850 So. 2d 932. The fact that multiple shots are fired at a victim indicates a defendant's culpable state of mind and satisfies the specific intent to kill requirement for murder. *State v. Hust*, *supra*; *State v. Griffin*, 618 So. 2d 680 (La. App. 2 Cir. 1993), *writ denied*, 625 So. 2d 1063 (La. 1993). The determination of whether the requisite intent is present is a question for the trier of fact. *State v. Minor*, 52,091 (La. App. 2 Cir. 9/26/18), 254 So. 3d 1278.

The defendant's mere presence at the scene is not enough to "concern" an individual in the crime. *State v. Brooks*, 49,024 (La. App. 2 Cir. 5/14/14), 139 So. 3d 1072, *writ denied*, 14-1202 (La. 2/13/15), 159 So. 3d 459; *State v. Thompson*, 39,454 (La. App. 2 Cir. 3/2/05), 894 So. 2d 1268.

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid or abet in its commission, or directly or indirectly counsel or procure

12

another to commit the crime are principals. La. R.S. 14:24. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state, which in the case of attempted first degree murder is specific intent to kill. *State v. Mills*, 2013-0573 (La. App. 1 Cir. 8/27/14), 153 So. 3d 481, *writs denied*, 14-2027 (La. 5/22/15), 170 So. 3d 982, and 14-2269 (La. 9/18/15), 178 So. 3d 139. It is not enough that his accomplice have the intent; the State must prove that the defendant had the required mental element. *State v. Tate*, *supra*; *State v. Mills*, *supra*.

Acting in concert, each person becomes responsible not only for his own acts, but for the acts of the others. *State v. Anderson*, 97-1301 (La. 2/6/98), 707 So. 2d 1223; *State v. Jones*, 49,830 (La. App. 2 Cir. 5/20/15), 166 So. 3d 406, *writ not cons.*, 15-1524 (La. 3/14/16), 188 So. 3d 1067. Under the law of principals, a person may be convicted of an offense even if he has not personally fired the fatal shot. *State v. Jones*, *supra*.

### Discussion

The defendant contends that the state tried to prove that he had specific intent to kill the house occupants and committed an overt act toward that goal through the testimony of his co-perpetrators. He maintains that their testimony was so lacking in credibility that it was not worthy of belief.[9]

The defendant and his cohorts attempted to force entry into an inhabited home to steal drugs. When their entry was frustrated by Deshun Jr.'s actions in trying to slam the door shut, the person whose arm was trapped in the door fired repeatedly into the interior of the house and the

---

[9] Additionally, the defendant argues that there was no proof that he or any of his cohorts knew there was more than one person in the house. In support of his argument, he cites *State v. Whins*, *supra*. However, since the jury was not charged under La. R.S. 14:30(A)(3), this argument is irrelevant.

others outside began indiscriminately shooting into the house. Crime scene photos showed numerous bullet holes in the interior walls and the kitchen appliances, as well as a bullet hole in the living room television set. They also show bullet holes on the exterior of the house.

All of the other men involved in the shooting at the McDaniel house testified against the defendant. Each man said that "hitting a lick" at the McDaniel house was the defendant's idea. The men agreed that the defendant assumed a leadership role in committing the offenses, which included driving them to and from the crime scene. He also recruited the participants. Chisley and Jackson were childhood friends of the defendant, whereas Hardiman had known him for about five years. Chisley and Jackson had never met Hardiman before the day of the offenses.

The accomplices' accounts varied on some details, such as who kicked in the side door of the McDaniel residence. According to Hardiman, the defendant went up the steps to the side door, kicked in the side door, and began shooting into the house. He testified that the defendant was the first to start shooting. Hardiman admitted standing by the stairs and twice firing the .380 handgun he was carrying. Chisley testified that, after the defendant led the group up to the house, Hardiman kicked the door in. He denied knowing whose arm was stuck in the door, but he admitted telling the prosecutor earlier that it could have been the defendant. He also testified that he did not see Hardiman stick his hand in the door, but he "couldn't see directly" whether the defendant stuck his arm in the house. He further testified that they all shot at the house. Jackson testified that both the defendant and Hardiman went to the door; Hardiman kicked in the door and the defendant started shooting. Like Hardiman, Jackson testified that the

defendant was the first to begin shooting. He denied firing the 9 mm handgun he was carrying, saying he had no reason to do so.

The jury, which heard this testimony and observed the demeanor of these witnesses, made multiple credibility determinations. It rejected the defendant's attacks on the credibility of the state's witnesses and reasonably concluded that the defendant possessed the specific intent to kill Deshun Jr. and Deshun Sr., the adult occupants of the house, during the commission of the aggravated burglary and that he committed an act in furtherance of killing them.

We note that, as to eight-year-old T.M., the jury was charged pursuant to La. R.S. 14:30(A)(5), i.e., that the state had to prove that the defendant had the specific intent to kill a victim who was under the age of 12 years and commit an act in furtherance of killing him. At the time of the incident, T.M. was playing video games on the television in the living room, which was adjacent to the kitchen. According to the testimony of Deshun Jr., the child was sitting in such close proximity to the door between the kitchen and the living room that he would have been the first thing seen by the armed person attempting to enter the house by the side door. Deshun Jr. testified that, when the door first swung open, the first shot fired by the intruder almost hit his little brother in the head. Crime scene photos showed where a bullet struck the living room television in front of which the child had been sitting. When shown photos of his living room, Deshun Sr. testified that, based on where T.M. sat to play video games, the bullet that hit the television must have gone by the child's head.

The evidence was sufficient for the jury to reasonably conclude that the defendant was the shooter whose arm was caught in the door. Deshun

15

Jr.'s testimony that his little brother was in plain view of the door was sufficient to prove that the defendant had the specific intent to kill this young child. Further, Deshun Jr.'s testimony was fully corroborated by the crime scene photos that were introduced into evidence. The photos reflected the close proximity of the living room where the young child was playing video games to the door where the defendant was shooting into the living room. They also show that the top half of the side door had glass panes, which would have provided the defendant with visibility into the kitchen and the living room.

Accordingly, viewed in the light most favorable to the prosecution, the evidence in this record is clearly sufficient to prove beyond a reasonable doubt that the defendant committed the crime of attempted first degree murder against the three members of the McDaniel family.

## INEFFECTIVE TRIAL COUNSEL

In this assignment of error, the defendant alleges that his trial counsel was ineffective because he failed to file a motion to quash an allegedly defective amended bill of indictment. We disagree.

### *Law*

Under Louisiana law, prosecution for a capital offense or an offense punishable by life imprisonment shall be instituted by indictment by the grand jury, and prosecution of other felony offenses shall be initiated by indictment or information. La. Const. art. I, § 15; La. C. Cr. P. art. 382(A). An indictment is a written accusation of crime made by a grand jury that must be concurred in by not less than nine grand jurors, indorsed a "true bill," and the indorsement must be signed by the foreman. La. C. Cr. P. art. 383. *State v. Brazell*, 2017-0032 (La. App. 4 Cir. 4/18/18), 245 So. 3d 15,

16

*writ denied*, 18-0868 (La. 3/6/19), 266 So. 3d 900, *cert. denied*, 140 S. Ct. 263, 205 L. Ed. 2d 167 (2019).

The district attorney has full authority to amend bills of information and indictments, both as to form and substance, at any time before trial. *State v. Singleton*, 52,151 (La. App. 2 Cir. 1/16/19), 263 So. 3d 1269, *writ not cons.*, 19-00457 (La. 8/12/19), 279 So. 3d 913; *State v. Johnson*, 49,985 (La. App. 2 Cir. 5/18/16), 196 So. 3d 26, *writ not cons.*, 16-1074 (La. 5/1/17), 219 So. 3d 1101. The purpose of requiring the State to file an amendment to an indictment before trial is to provide the defendant with adequate notice of the crime for which he is charged so he can properly prepare his defense. *State v. Wright*, 40,945 (La. App. 2 Cir. 5/19/06), 931 So. 2d 432, *writ denied*, 06-1727 (La. 3/16/07), 952 So. 2d 694; *State v. Delandro*, 2001-2514 (La. App. 1 Cir. 5/10/02), 818 So. 2d 1011. When the indictment against the defendant provides sufficient notice of the crime with which he is charged, a defendant suffers no prejudice. *State v. Delandro*, *supra*; *State v. Brazell*, *supra*.

The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. *State v. Draughn*, 05-1825 (La. 1/17/07), 950 So. 2d 583, *cert. denied*, 552 U.S. 1012, 128 S. Ct. 537, 169 L. Ed. 2d 377 (2007). A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. *State v. Singleton*, *supra*; *State v. Scheanette*, 51,851 (La. App. 2 Cir. 2/28/18), 246 So. 3d 718.

A claim of ineffective assistance of counsel is analyzed under the two-prong test developed by the United States Supreme Court in *Strickland v.*

17

*Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that counsel's deficient performance prejudiced his defense. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. *Strickland v. Washington*, *supra*; *State v. Jones*, 49,396 (La. App. 2 Cir. 11/19/14), 152 So. 3d 235, *writ denied*, 14-2631 (La. 9/25/15), 178 So. 3d 565.

Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. However, when the record is sufficient, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. *State v. Jones*, *supra*.

### *Discussion*

The original bill of indictment, which was filed May 31, 2017, was in proper form and charged the defendant, Chisley, and Hardiman with seven offenses, including first degree murder.[10] The copy of the bill of indictment found in the appellate record has a handwritten notation striking out "first degree murder" and writing "manslaughter" above it. The initials of the

---

[10] At the time of his arraignment on July 12, 2017, defense counsel stated on the record that, while the state had already decided not to pursue the death penalty, the defendant was still charged with first degree murder.

assistant district attorney and the date "8/16/2018" are found next to the notation. Pursuant to the severance of the defendant's case from his co-defendants', an amended bill was filed against only the defendant on September 11, 2018. This bill, which was signed by the assistant district attorney, also corrected the date of the offenses, the house number of the McDaniel home, and the fact that the inhabited dwelling where the aggravated burglary was alleged to have occurred belonged to Deshun Sr. and his wife, not Deshun Jr. It charged the defendant with the same offenses listed in the original bill, including first degree murder. On September 12, 2018, the defendant appeared in court on pretrial matters. The state recited the charges against the defendant, which included first degree murder, and noted that he had declined a plea agreement which would have allowed him to plead guilty to an amended charge of manslaughter and the aggravated burglary charge. When asked if he wished to go to trial on all of the pending charges, including first degree murder, the defendant replied, "Correct."

When the defendant's case came up for trial on September 17, 2018, the first matters placed on the record by the state were the amendments as to the date, the address, and the persons to whom the dwelling belonged. Defense counsel stated that he had no objection to the amendments. The contents of the amended bill, which recited the first degree murder charge, was read to the impaneled jury at the beginning of trial. The state presented the testimony of Chisley, who admitted that he had already pled guilty to manslaughter and aggravated burglary. Copies of his written plea agreement, dated August 16, 2018, the same date as the handwritten notation on the original bill of indictment, were admitted into evidence by both the state and the defense.

The defendant argues that the handwritten notation on the original bill of indictment reduced his charge of first degree murder to manslaughter and that the subsequent amended bill still charging him with first degree murder was defective because it was not signed by the grand jury foreman. The defendant contends that, as a result, his trial counsel was ineffective because he did not file a motion to quash the amended bill. We conclude that the record before us is sufficient to address the defendant's arguments, which we find to be meritless.

The prosecution against the defendant for first degree murder was validly instituted by a grand jury indictment. The defendant was arraigned only once, in July 2017, at which time he entered a plea of not guilty to the first degree murder charge in the original bill of indictment. Under La. C. Cr. P. art. 487, the state had the authority to amend the indictment prior to trial. The amendments made by the state as to the date and the McDaniel residence did not prejudice the defendant in any manner. Furthermore, the evidence in the appellate record firmly establishes that the handwritten notation on the original bill of indictment concerned Chisley's guilty plea, which was entered on August 16, 2018. As a result, there was no valid ground for trial counsel to file a motion to quash the amended bill. Thus, his failure to file such a motion cannot be construed as ineffective assistance of counsel.

This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed above, the defendant's conviction and sentence for aggravated burglary are vacated. The defendant's remaining convictions and sentences are affirmed.

**CONVICTION AND SENTENCE FOR AGGRAVATED BURGLARY VACATED; ALL OTHER CONVICTIONS AND SENTENCES AFFIRMED.**